May it please the court. My name is Morgan McPheeters, and I'm here this morning with my co-counsel, Mr. Tanner Franklin, and we represent the appellant in this case, Trooper Sykes, who was a trooper with the Texas Department of Public Safety who filed claims under the act. We also represent three other DPS troopers, Troopers Banhan, Riggins, and Barton, whose claims under the act proceeded to trial and resulted in a jury verdict in their favor. There are essentially three big issues before the court today. The first one being whether the court has jurisdiction to consider DPS's cross appeal as to the jury verdict. The second one being whether the troopers properly initiated a grievance or appeal action, which is a prerequisite to file suit under the Whistleblower Act. And then the third big issue is DPS challenges the legal sufficiency of the verdict as to just Trooper Barton's claims and whether they were whether his adverse personnel action was a result of his whistleblowing. But it's telling that that's really the only legal sufficiency point that they have raised to attack the jury's verdict here. I think this shows that they know that DPS retaliated against these troopers. They don't dispute the damages that were awarded by the jury. Instead, they are simply attacking the verdict based on a hyper technical reading of this remedial statute, which is meant to be interpreted liberally in favor of the troopers here. And really, the overarching question before the court today in a couple different contexts is whether various parties at certain points properly initiated an appeal, whether that's in the context of the troopers under the Whistleblower Act, or whether it's DPS failing to file their notice of appeal. I'm up here arguing first this morning because Trooper Sykes was the first to file a notice of appeal in this case. And he was actually the only party to file a notice of appeal timely in this case. It's it's ironic that DPS wants to undo this jury verdict based on their interpretation of the Whistleblower Act, and their interpretation that the troopers failed to properly initiate any grievance or appeal when they wholly failed to initiate their own cross appeal in this case. So while they're asking for a super technical magic words reading of the Whistleblower Act, at the same time, they want leniency in their own assertion of an appeal and whether their emergency motion to stay constituted a notice of appeal. What's key is the fact that Texas courts interpreting the Whistleblower Act have said, when it's unclear what a particular agency's grievance policies are, we need to err on the side of the complainant and not and certainly not read that against them if they fail to maybe particularly comply with some policy. If there's not a policy that's so set out so specifically, we err on their side and we err on the side of finding that the court has jurisdiction to consider their claims. Federal Rule of Civil Procedure or Appellate Procedure rather 3 is not so unclear. It sets out exactly what DPS was required to put in their notice of appeal in order to grant this court jurisdiction to consider their appeal. That timely filing of a notice of appeal is a jurisdictional requirement. The purpose of that requirement is to give the parties and the court fair notice that a particular order or judgment is being appealed. Here, DPS filed an emergency motion to stay and they realized later that they had blown their notice of appeal deadline and then tried to argue, no, actually that motion to stay constituted our notice of appeal. But that actually did not assert that they were appealing. The key language in there that they point to actually only says that they intend to file a notice of appeal. So they intended at some later date apparently to file a notice of appeal. That is not the same as noticing an appeal. The case that we've cited in our briefing on that point is the Coletta case. It is an unpublished opinion from this court but there I think that language is analogous that the court considered in that case. There were some pro se litigants who filed a motion for extension to file their notice of appeal. The language there was that they were seeking quote additional time to appeal the denial of a motion. This court concluded that they never actually asserted that they were appealing. Rather they just were saying that they intended to at some point. That's the same thing we have here. We have just a statement that DPS intended at some later date to appeal. So for that reason that this court can dispose of the entire cross appeal for just lack of jurisdiction over it. Turning back to the substance here, with regard to the troopers whose claims went to trial, troopers Riggins and Mahan unquestionably properly initiated agreements within the meaning of the whistleblower act and within the meaning of the DPS employee policy manuals. DPS agrees that the February 8th 2019 letter from the troopers attorney that was sent directly to the dispute resolution chief officer Kevin Meade unquestionably initiated agreements. This is in fact one of the informal options that's listed under the DPS policy manual. DPS just argues though that with regard to Riggins and Mahan who their adverse personnel action that went to the jury trial was that they were later transferred to undesirable locations that made it really difficult to commute to work, kept them away from their families, that this was their the retaliatory act against them for their whistleblowing. So DPS says well because that happened later that can't possibly count as initiating an appeal under the whistleblower act. But and what they want what DPS wants is for these troopers at every step of the way every single time there's some new act of retaliation some new act of abuse which the evidence at trial showed was happening really all the way through even at summary judgment the district court noted that there's still acts that are happening in retaliation. DPS wants these troopers to have to restart the clock redo the grievance procedure every single time something happens when in fact the retaliation that comes after this February 2019 letter is simply a continuation and an escalation of that same hostile work environment the same abuse from sergeant Shugart. But even if that's not the case even if a prior initiation of a grievance can't qualify to second reason that troopers Riggins and Mahan still properly initiated their appeal and that's because reporting that transfer the retaliatory transfer to the office of inspector general within DPS was also sufficient to count as initiating an appeal or a grievance. While the OIG and lieutenant Lopez are investigating really this entire overarching hostile work environment troopers Mahan and Riggins immediately call him and notify him hey we have been retaliated against in this specific way we've been transferred to this other location we think this is retaliation. So they assert that grievance the the evidence at trial shows that the office of the inspector general and DPS are in communication constantly. So this idea that the OIG is somehow completely separate that any investigation done by the OIG really can't result in any dispute resolution has nothing to do with DPS is simply just not played out by the evidence. And when we look at the language of the DPS policy manual it doesn't mention the office of inspector general it doesn't say that that can't be a method for dispute resolution and in fact what the manual says is it defines dispute resolution to mean any strategy or method used to resolve grievances and then it says including but not limited to and it lists some options. But here we have a policy manual that tells these troopers dispute resolution can be anything any strategy any method and then they give examples you know it could be consulting with a dispute resolution officer it can be conflict coaching chain of command review which is one of the formal ways to initiate agreements facilitation and mediation but those are just examples they're not limited to that by any means and what we have in the record at trial is that virtually every level of the chain of command within the department of public safety agrees that these troopers could report these grievances the retaliation the illegal quota system to the OIG all the way up to the director and there's simply no evidence offered by DPS to show that that was not an option. So as they rely on cases that in other contexts have found that reporting to an OIG didn't count those cases involved instances where there was evidence different from here that that that that was not an option to assert agreements whereas here we have this manual that is really not not a model of clarity but its plain language is very broad very open so no question that Riggins and Mahan both initiated that that grievance procedure and the same thing goes for Barton and finding that these troopers all properly satisfied the acts prerequisites supports the purpose of this whistleblower statute the whole purpose is to prevent our government agencies from retaliating against employees who do the right thing come forward and report violations of the law and so it's designed to provide them a remedy when they are retaliated against it's a remedial statute we're supposed to construe it liberally in their favor and again courts have said where there's a question about whether or not someone has complied with a grievance procedure we ought to err in their favor. Barton just very quickly Barton was another one of the troopers whose claims went to trial again hit the February 2019 letter DPS concedes was an initiation of agreements procedure. Barton's adverse employment action happened before that letter it happened in January then the letter came in February. DPS with regard to Barton claims that well the letter doesn't specifically say that you were denied approval to apply for this crisis negotiation unit and therefore because you don't use the magic words it doesn't count but again for the same reasons this letter gave DPS fair notice there's there's really no question looking at this record at trial that everyone within the department knew what was happening they knew who was complaining they knew what the issues were they knew everything that was happening with the OIG investigation they had their own investigations going there's really nothing to show that you know oh DPS didn't have their notice how could we have resolved this we didn't know what the problem was they they absolutely knew what the problem was and to the extent that there's any confusion about whether the February 2019 letter specifically grieved Barton's CNU application that's completely wrapped up with then he specifically reports that same grievance to Lieutenant Lopez who's doing the OIG investigation so if there's any confusion about what his particular grievance was that eliminated that question. I see that I am just about out of time so if the court has no questions for me I will reserve the rest I do as of today what is your position with respect to the district court entering sua sponte amending its final judgment under federal civil procedure 68 for certain equitable relief I don't believe you've mentioned it in your discussion today yes your honor our position is that the district court was well within his discretion to do that even though he did not identify he identified completely different rules in his order than what you're arguing well he stated rule 60 as his basis which allows him to modify for where he's intended to include something and then it's simply omitted by mistake which the evidence from the hearing shows that that's exactly what happened at the same time the troopers had also filed a separate motion under 59e which I think there's no question that would have allowed him to do exactly what he did however the district court makes no reference to 59e after considering the 59e motion the response in the oral argument you have anything further to say on that point the district court denied the 59e motion as just being moot so I don't think that there's anything to suggest that that the district court did a substantive analysis of that I think that the court uh that the court believes that under rule 60 that gave him the same authority to make those so I think that the are you arguing this court should speculate beyond the plain language of the district court's amended final judgment no I think that rule 60 gives him the authority to do what he did and to the extent that if if rule 60 doesn't go quite that far the fact that rule 59 was presented as an additional ground to do that I think allows the district court to do what he did and I don't think that it shows an abuse of discretion uh to have stated rule 60 when if this court were determined that's not exactly what rule 60 allows when we know 59 would permit it and it was also raised so just so I'm following you you're saying in my opinion conceding that rule 60 doesn't exact your words I think exactly allow him to do what he did but because you argued and the district court conceded considered 59e this court should go back to 59e and not rely on the specific plain language in the judgment not quite your honor okay so tell me help me understand because I'm confused so our position is that rule 60 does permit exactly what happened here it is designed to fix clerical mistakes or oversight and the case law says to figure out if there was a clerical mistake or just an oversight we look for evidence that the judge intended to include something and then simply fail to do so and that's what we have here at the hearing the judge essentially says I I meant to include this and I forgot and I didn't I it was supposed to be in there um no question this type of relief is allowed by the statute we the plaintiffs had pled it he just meant to include it and didn't and so that's exactly what rule 60 allows but I think that if the court were to determine no that's not what rule 60 allows I do think the fact that the plaintiffs had raised it as an additional ground I think that this court could still affirm the amended final judgment because it was it was raised and would also permit you have any authority on that if we find uh 60a is not applicable I don't your honor um and perhaps what could happen though is if because the district court didn't consider that point didn't consider rule 59 and just simply denied it as moot um I I would think then the the district court should be given the opportunity to what's your best case supporting that this is clerical as opposed to substantive uh one of the cases that we cited in our briefing was the chavez versus belesh case uh from this court from 1983 and in that case um the the district court had inadvertently omitted an entire element of damages the liquid liquidated damages and in looking at the evidence the record showed that the judge had intended to award that and it was simply just omitted which is essentially the same thing that happened here he intended to to enter a ruling on the equitable relief and just forgot was it done okay if there are no further questions um I will reserve remaining time for rebuttal if if I do have any remaining time thank you so may it please the court my name is benjamin dower I represent the three appellees as well as the department of public safety as cross appellant appellees ask the court to affirm the district court order granting the defendant's motion for summary judgment as to appellant sykes and cross appellant dps asks the court to reverse the district court order denying its renewed judgment as a matter of law the primary issue in both mr sykes appeal as well as dps's cross appeal is whether or not the plaintiffs properly grieved under dps policy and we respectfully submit that evidence both in the summary judgment context as well as that trial reveals that none of the plaintiffs met the requirements of the whistleblower act now the texas supreme court holds that a would be plaintiff under the whistleblower act must strictly abide by its procedural limitations to obtain relief strictly abide and so I respectfully submit that what the my friend on the other side characterizes as hyper technical is not hyper technical it's it's strictly abiding by it and one of those procedural requirements is that the plaintiff must initiate action under the employer's grievance or pre-appeal procedures before suing now this provision has sort of three I don't know if I'd call them elements but three requirements first the grievance or appeal procedure must be initiated by the plaintiff the person suing second it must be under the employer's grievance or appeal procedures and third it must relate to the adverse personnel action all three of those requirements must be met and here none of the plaintiffs either submitted a grievance or an appeal that meets all three criteria before suing as it relates to the adverse personnel actions that they're that they're suing about and for the trial plaintiffs that went to trial now it's not unclear here what dps's grievance policy is it's found in the record in the summary judgment context on page 315 to 321 and in the trial record it's found at 3445 to 3448 and it's an excerpt from the department of public safety general policy manual now that identifies two informal avenues and two formal procedures for for grieving and the dispute resolution office plays a role in all four and none of the plaintiffs in this case used those one of those grievance procedures as it relates to the adverse personnel action that for the trial plaintiffs that went to trial and for mr sykes that he raised in the live pleading as of when his claims were dismissed now focusing first on mr sykes he fails all three requirements he did not initiate a grievance or an appeal because he merely participated in the office of inspector general investigation into someone else's complaint and under the case law as regards to whistleblower act claims the grievance must be initiated by the he didn't initiate anything he was merely interviewed it was also not under the employer's procedures because the interview that he was there the interview related to the whistleblowing complaint about the quota system and and it was to the office of inspector general which as i'll talk about in a minute is not part of the grievance procedures of dps it's a law enforcement authority who watches and enforces law as to other law enforcement authorities such as the department of public safety and then also did not relate to the adverse personnel action that he sued about and you can see this right in the language of the second amended complaint when it's talking about the retaliation for mr sykes it says it starts that section by saying after he had spoken to oig lopez who is the oig investigator and so even in the chronology in the pleadings he's saying that the retaliation that he's suing about happened after the interview that he contends was the grievance um and so i want to take a quick step back and like big picture so when there's a whistleblower lawsuit it means that someone blew the whistle you know alleged that their employer is engaged in some unlawful activity and then the employer allegedly retaliates and then they sue about the alleged retaliation and i think i think the thing that keeps getting sort of blurred here and i want to sort of separate and distinguish is the allegation about the unlawful quota system was the whistleblowing and so that you know when the office of inspector general is absolutely the right authority to investigate that that type of allegation that there is something illegal happening but then when the department of public gave him approval for this crisis negotiation unit but he didn't know about it and so he alleged that the failure to cc him on the email was the retaliation and for mr riggins and mr mayhem the alleged retaliation was them being transferred out of the hostel work environment that they had alleged to other other stations and that occurred after you know they blew the whistle to the office of inspector general and now they're trying to say well the investigation into the whistleblowing activity was the grievance and then that's just the office of inspector general is not an employer grievance policy that is who you report serious allegations of misconduct things that are criminal things that are allegedly unlawful that's what their function is their function is not to resolve for mr sykes he his adverse personnel actions occurred after the interview that he alleges was him grieving which again he didn't initiate now turning then to the trial plaintiffs mr barton he identifies as we just heard this february 8th 2019 letter to the dispute resolution office that four of the plaintiffs in this case there was an attorney who represented all four now yes that was initiated by the employee because dps doesn't dispute that an attorney acting on someone's behalf you know is is basically the same as them initiating because they're acting as an agent for the principal and we don't dispute that sending something to the dispute resolution office was under the dps policies because that's that's one of the ways in which you can grieve but it wasn't related to the adverse personnel action nowhere in that letter to give even a hint that mr barton was contending that something amiss had happened with regards to the crisis unit negotiation application and the purpose of the exhaustion requirement or grievance requirement is to give the employer notice of a grievance and a chance to resolve it that's what this court held in the and then there are other cases similarly holding that the notice given to the employer must provide fair notice that the employee desires to appeal or hear grieve the employer's personnel decision and fair notice of the decision made by the employer from which the employee decides desires to appeal that's the ward versus lamar university and i simply submit to the court that if you to know that mr barton intended to put dps on notice that the approval that he received but didn't know he received was in some way retaliatory or that the crisis unit negotiation position was in any way an issue um which is part of the reason that mr barton never learned that he received the approval you know what happened was he sent an email and he requested the approval of his supervisor and three hours and 24 minutes after that email was received his supervisor sent an email to his superior saying you know we recommend that he or i recommend that he be approved and the theory that went to the jury was that his failure to cc or circle back to mr barton was retaliatory now mr barton never raised that with dps and said hey you know i haven't heard anything back i guess you guys shot me down i'm upset about this and that issue was not that never went to dps's attention dps did not know that this was that this was an issue from dps's perspective approval to apply had been given and he just simply didn't apply and the whistleblower act is a very tight turnaround on these things you have to grieve within 90 days of the adverse personnel action that you're suing about and so had he followed any of the four mechanisms in the general policy manual and said hey you know i'm going to the dispute resolution office and i'm consulting with the dispute resolution officer i want to do conflict coaching i want to do a chain of command review or mediation had he done any of those things within 90 days in all likelihood the misunderstanding would have been resolved instead he contends that when he was interviewed by the office of inspector general he he raised it with the office of inspector general um investigator but that's simply not a means through which dps resolves grievances and this case has very similar facts to the city of houston versus cotton case and the city of houston versus garcia case both of which from the houston court of appeals the first and 14th districts respectively and cited in the brief and in those cases the appellate courts held that the city of houston's office of inspector general was not a means through which to grieve a city of houston personnel decision because their function is to investigate retain complaints of retaliation not to resolve employee problems but to resolve issues for the city and its function is to investigate not to adjudicate and after the investigation i'm quoting here the oig simply reports its findings and conclusions to others and that's exactly the facts and the evidence in this case that that the office of inspector general is there to investigate serious misconduct it's by statute texas government code section 411.251 they independently in objective and objectively review investigating criminal activity allegations of wrongdoing crimes committed by the department they're not there to try to resolve personnel issues like hey why didn't you approve my application for this crisis negotiation unit training or hey this transfer that you're doing to get me out of a hostile work environment that i complained about i'm actually really unhappy about that and i don't think it's a good idea and you know when when the office of inspector general is looking at these things and i think this is reflected in the report itself which is found in starting in the record at 2770 you know they're looking at it through the lens kind of like a lawyer or a criminal investigator they're thinking was this actually unlawful is what happened a violation of the whistleblower act is it a crime they're not thinking about it from the perspective of an employer like is this a good idea is this a good personnel decision is this wise from that perspective and they're also not in any hurry to report because they want to get it right and they want they're thinking about it from the perspective of you know was this a crime they're not thinking about it from the personnel decision standpoint and so here they took 12 months to actually make their findings whereas in the grievance process we're thinking fast turnaround because the employer has an incentive to resolve the issue because after all within 60 days of the employee initiating the grievance process they can file a lawsuit and the entire point of having this requirement in the whistleblower act is to give the employer an opportunity to resolve the dissatisfaction prior to the employee suing about it and that you know i keep going back to mr barton had he done that had he used any of the mechanisms in dps policy then then then the issue probably would have been resolved because it was a misunderstanding um i also want to emphasize that my friend on the other side made the point that the list in the policy uses the word including suggesting it's not exhaustive but i would humbly submit to your honors that there's nothing informal about reporting your employer to law enforcement i mean if to use the example of like if someone's stealing from the cash register it doesn't help resolve the grievance to report them to the local police and that's effectively what the office of inspector general is it's law enforcement for law enforcement it is not part of how dps resolves you know disputes with its employees um and that's why for mr riggins and mr mahan neither of them um exhausted or grieved either because while it is true the evidence showed that they contacted the office of inspector general an investigator who was reporting or investigating their whistleblower complaint the alleged unlawful quota system that's not part of resolving a grievance had they initiated any of the means through which dps policy recognizes in the policy manual then that would have been a way to to grieve those issues and say hey i know that my my immediate superior said that this was a win-win because it gets me out of the the hostile work environment i've reported um but i don't see it that way because now i'm going to have an hour and you know an hour commute each way and while i am being paid for that because it's on the clock at the end of the day i'm i'm really unhappy about that i don't think that's a fair way to resolve this issue and if they had used the the you know the grievance system any of those four mechanisms then they could have used the chain of command all the way up to and including the director of dps to get that perspective to the people that make personnel decisions rather than the office of inspector general who's focused on you know was this a crime or was this a violation of law not looking at it through the lens of you know is this a good idea from a personnel management perspective i do want to quickly talk about the court's jurisdiction over the cross appeal um rules the only requirement for what is constitutes a de jure notice of appeal is that it has to be filed within the time required by rule four and that contained the it was filed within 30 days of entry of the judgment i think it was filed within four days actually and it gave the notice required because it identified the court to which the appeal was taken this court it specified the party or parties taking the appeal and it designated the amended final judgment as the um the thing being appealed my friend on the other side quoted the unpublished case of the security and exchange commission versus coletta but that is readily distinguishable as we do in our our ultimate brief in this case because there the intent to appeal was extremely equivocal the party failed to state which judgment or order they were appealing and they only indicated that they needed more time to determine if the issues warranted an appeal and here dps's emergency stay was unequivocal in stating the intent to appeal that defendant is likely to succeed on the merits of the appeal there was nothing equivocal wishy about what was filed the intent to appeal was clear from the document and while my friend on the other side emphasizes that well that wasn't what they intended dps's counsel didn't intend that to function as the notice of appeal the supreme court held in smith versus berry that the intent uh is not really the what matters they not the litigates litigants motivation in filing the appeal must not be dismissed for informality of form or title of the notice of appeal in my remaining few minutes i do want to touch briefly on the other two issues the uh jury's verdict for mr barton we do ask the court to um to reverse that verdict because um it's no reasonable jury could conclude that mr barton engaged in excuse me not mr barton that mr engaged in inaction and or delay with respect to barton's promotion request nor could they conclude that that was in some way retaliation the evidence as i mentioned earlier shows that the approval was prompt it was within three and a half hours of receiving the email um and so there's no inaction and or delay um i know that at trial um plaintiff's counsel argued well the inaction or delay was really him circling back to let mr barton know i went ahead and recommended you um respectfully i think that goes too far afield from the actual language of the jury charge um i don't think that's with respect to the promotion request but even if it does fall within the scope of the language of the jury charge we would submit that there's simply no protected activities in the case didn't the jury consider that argument they did your honor they did but i think in so doing they necessarily sorry what makes it unreasonable i mean you know flipping a jury verdict is a no i i know your honor i know and that's part of the reason why dps did not you know advance the argument as to mr mahan and mr riggins i know my friend on the other side made some negative conference uh comment about that as though we can draw inferences that of course we don't but but i think for mr barton specifically the evidence that mr sugar you know issued the approval so quickly that his superior also approved it is so strong and the absence of any sort of direct or even circumstantial evidence regarding you know a failure to cc being motivated by something that the jury's necessarily relied on speculation in reaching their conclusion and so while i recognize that it is an extraordinary request i think the evidence here substantiates it and i think the case that my friend on the other side relies on the bible versus harry harris county case is readily distinguishable because there there was lots of circumstantial evidence as it related to the specific personnel action at issue which was basically that the interview was supposed to last for 30 minutes they cut the plaintiff off at four the alleged retaliator was rolling their eyes during the interview all of these things that related to the specific personnel action at issue which the jury could have reasonably relied on and to support the verdict and here we've got just the opposite uh the superior being supportive of the request and doing so very quickly given there was only a two day two days left to give the approval uh i see that i'm out of time uh if you have questions obviously i'm happy to entertain them um if not i'll wrap up okay for all these reasons we ask the court to uh firm the district court order at summary judgment and reverse and render regarding the um the renewed motion for judgment as a matter of law may it please the court the troopers here tried to do the right thing they tried to honor the chain of command they tried to raise these issues within the chain and the chain betrayed them it's absolutely reasonable looking at this record for them to think i need to go to the oig because my chain of command is not taking this seriously or worse my chain of command is part of the problem with regard to trooper sykes um he initiated a grievance his adverse employment actions were his allegation that he was being stalked by his supervisors at his home they were denied a request to transfer to a location that would be closer to his family in the summary judgment record we see that sykes met with someone in his chain of command who met with captain mcdaniel after putting in that transfer request and he specifically testified that he he told her y'all are retaliating against me for doing this meaning for speaking out about investigation where those were those issues were reported and investigated as well with regard to the uh the comments about the oig's purpose that it's not to resolve grievances my opposing counsel says that the oig is meant to be a place where you report serious allegations or violations of the law that's what these gentlemen were doing this is not just a garden variety personnel hr issue hey i don't like this transfer i'd like to be transferred somewhere else that sort of thing what they're alleging is illegal retaliation so if the oig is meant to investigate and resolve disputes and allegations and violations of the law that's a great place to go and that's exactly what basically everyone in the chain of command said at trial with regard to um trooper barton the case law says that when we're trying to decide if a particular personnel action was retaliatory and if it was caused by a whistleblowing incident we are to look at all of the circumstances and we can consider circumstantial evidence one of those factors is the failure to abide by previous procedures for employment actions barton testified that he had previously asked for chain of command approval the same type of approval in the exact same way and that the way that he got notified that he received that approval was through an email uh so this is what he reasonably expected i think that dps perhaps tries to minimize this issue by saying oh he just wanted to be cc'd on the email but it's it's not that it's the that evidence shows that's exactly what has happened before and that's exactly what he reasonably expected to see not notifying someone that you've given them or you've technically given them approval is inaction and that's exactly what the jury found um another factor that courts are to consider is whether the stated reason for that employment action is just pretext right is the question here is you know is shugart giving technical approval but not ever telling barton is that just pretext as a way to to retaliate against him and if we look in the record we see that there's evidence that shugart and lieutenant brazil both had tried to deny another trooper trooper ramos uh an employment opportunity because he had participated in the complaints against shugart as well so taken together with other evidence cited in our brief that suggests that what was happening here was pretext oh we didn't we didn't notify you but we technically gave you approval well it just really didn't mean anything for them to technically give approval but never tell him and just lastly um with regard to the dps policy manual and the grievance procedures again that language is so broad it says including but not limited to and this this cash register example that you know oh it would be of course permissible for an employee who is robbed to report it to law enforcement and to do whatever's in the policy manual um that might be true that might be more applicable here if we didn't have so much evidence in the record that the oig was precisely a place to report these grievances as these troopers did so if there's no further questions we would just ask that the court reverse the summary judgment and affirm the jury verdict and judgment in favor of the troopers in all respects thank you the court will take a brief recess